FILED

2014 JAN 27 AM 11: 16

COMMON PLEAS COURT
CHAMPAIGN COUNTY, OHIO

IN THE COMMON PLEAS COURT OF
CHAMPAIGN COUNTY, OHIO
CIVIL DIVISION

AMY SCOTT
30 N. Houston Pike
South Vienna, Ohio 45369

    Plaintiff,

vs.

ORBIS CORPORATION
200 Elm Street
Urbana, Ohio 43078

    Defendant.

Case No. '14 CV 121

Judge

COMPLAINT
JURY DEMAND ENDORSED
HEREON

---

Now comes Plaintiff Amy Scott, by and through counsel, and for her Complaint against Defendant Orbis Corporation, Inc. states as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. This is an action for wrongful discharge arising from gender discrimination, pregnancy discrimination and for violations of the Family Medical and Leave Act.

2. Plaintiff is a natural, female resident of Clark County, Ohio by virtue of her residential mailing address at 30 North Houston Pike, South Vienna, Ohio 45369.

3. Defendant Orbis Corporation is a foreign corporation with a business location at 200 Elm Street, Urbana, Ohio 43078. At all times material hereto, Defendant was Plaintiff's employer.

4. Jurisdiction in this court is proper at least pursuant to the violations of Ohio Revised Code Section 4112.02 and 4112.99.

5. Venue is proper as the facts and circumstances in issue occurred within this Court's territorial jurisdiction.

## II. RELEVANT FACTS AND ALLEGATIONS

6. Plaintiff restates the allegations of paragraphs 1 through 5 herein as if fully rewritten herein.

7. Plaintiff began her employment with Defendant on January 19, 2009 as the Payroll Administrator.

8. Plaintiff performed exceptionally well in her position.

9. During her employment with Defendant, Plaintiff was off work twice for maternity leave.

10. During her first maternity leave, Plaintiff observed that Defendant's management was not happy that she was off on leave.

11. In January 2013, Plaintiff went off on her second maternity leave during her employment with Defendant.

12. Plaintiff returned from this maternity leave on April 8, 2013 and ten days later she was terminated on April 18, 2013.

13. During her two pregnancies while working for Defendant Plaintiff was often criticized and ridiculed for the pregnancies by Defendant's Plant Manager Joe Hibdon and other management representatives, including Tammy Blake, Human Resources Manager.

14. In the winter of 2010, Plaintiff had her initial pregnancy while working at Defendant Orbis.

15. Prior to leaving for her first maternity leave, Plaintiff trained a temporary worker from June-August 2011 on how to perform Plaintiff's job duties as the Payroll Administrator. During this time Plaintiff heard Defendant's then human resources manager, Karen Yowler tell the

2

temporary that Plaintiff's position might become open while she was off on maternity leave and that the temporary could become Defendant's new payroll administrator.

16. When Plaintiff asked Ms. Yowler what she meant by the aforementioned comment to the temporary, Ms. Yowler informed Plaintiff that she would be promoted to a human resources representative position and that Defendant would then need to replace Plaintiff as the Payroll Administrator.

17. On the second day after Plaintiff returned to work after her initial pregnancy leave, Ms. Yowler pulled Plaintiff into her office and told her she wanted Plaintiff to "talk to everyone like they were babies because I don't like the sound of your voice and if you don't you will be terminated." Ms. Yowler also told Plaintiff at this time that Plant Manager Joe Hibdon really wanted Plaintiff to be terminated and therefore, it was imperative that she talk to everyone like they were babies so she wouldn't be terminated.

18. Plaintiff also learned that while she was out on the initial maternity leave that Ms. Yowler had contacted one of Yowler's friends, Regina Hittepole to ask her how Defendant Orbis could terminate its Payroll Administrator who was on maternity leave at that time. Ms. Hittepole asked if this due to Plaintiff's job performance and Ms. Yowler stated no, it was for no other reason than Joe Hibdon wanting her terminated. Ms. Hittepole told Ms. Yowler terminating Plaintiff would be illegal and Yowler then advised Hibdon that Plaintiff couldn't be terminated at this time.

19. When Plaintiff returned from her initial maternity leave, Joe Hibdon made several comments to her telling her that he hated children, that he did not want or like them, that he didn't want grandchildren and if he had them, he would not have anything to do with them.

20. In October 2011, Regina Hittepole became Orbis Safety Manager and subsequently told Plaintiff about her conversations with Karen Yowler while Plaintiff was off on her first maternity leave with Orbis.

21. In May 2012 Plaintiff learned that she was pregnant again and began to have some illness complications associated with the pregnancy in June 2012. At this time, Tammy Blake was Defendant's Human Resource Manager and Plaintiff was very scared to tell Blake about her new pregnancy, because she believed she would be terminated, due to what she had learned about Defendant's actions during her initial pregnancy.

22. Because she was not feeling well, Plaintiff eventually told Blake that she was pregnant again and asked her not to tell Joe Hibdon.

23. After Plaintiff told Blake about her pregnancy Defendant began to take away her job duties, including interviewing, hiring, passing out training to employees, helping with new hire orientation meetings and with assisting/handling workers compensation claims.

24. In August 2012, Defendant brought in a new temporary worker, Sandy Moore, to file all workers compensation claims since Regina Hittepole had been terminated. Ms. Moore only had a high school education and on her very first day made it very clear she could no longer have children, due to a hysterectomy.

25. In mid-August 2012, there was a suspicion that someone had broken into the HR closet and stolen some shirts. Blake instructed Plaintiff to go to the computer room and view the security cameras.

26. While Plaintiff was in the computer room, Joe Hibdon and Tammy Blake walked by. Just as they were walking by, Plaintiff accidentally knocked over a metal desk file and both Blake and Hibdon came running around the corner to ask Plaintiff is she had fallen.

4

27. Plaintiff told Blake and Hibdon that she had not injured herself and Blake said, "I wanted to make sure that you didn't fall or that you weren't going into labor." Hidbdon remarked in a loud voice, "What, you're pregnant again?"

28. Plaintiff advised Hibdon that she was indeed pregnant again. Hibdon asked her if the pregnancy had been planned and Plaintiff replied; "no."

29. Hibdon then stated to Plaintiff and Blake, "are you and Jill O'Neal in competition with each other to see who can have their fourth baby?" Then Hibdon said, "well Amy this makes me think less of you now and you know my stance on having children and you know I don't like them." During this time, Tammy Blake did not say a word.

30. After this incident Defendant took away more and more of Plaintiff's job duties.

31. During the next several months Tammy Blake took more and more job responsibilities away from Plaintiff.

32. In November 2012, Plaintiff began to train the new temporary Sandy Moore on her job in anticipation of her upcoming maternity leave. Moore continued to point out on a regular basis that she had undergone a hysterectomy and could not bear any more children.

33. Plaintiff went on maternity leave from January 28- April 7, 2013 and this leave was covered by the Family Medical and Leave Act (FMLA).

34. About a month after her second baby was born, Plaintiff brought the baby into work. While she was there, Tammy Blake asked Plaintiff if her husband, Barry Scott, had gotten "fixed" or if Plaintiff had gotten "fixed" or if Plaintiff/her husband were planning on getting "fixed" so they couldn't have more children.

35. When Plaintiff returned to work on April 8, 2013 all that Defendant allowed Plaintiff to do was enter FMLA hours that hourly employees had taken into the FMLA tracker system.

5

Defendant did not allow Plaintiff to return to her job duties performed before going off on the FMLA approved maternity leave.

36. After returning to work on April 8, 2013, Defendant's Human Resources Manager, Tammy Blake continued to ask Plaintiff on several occasions if Plaintiff's husband had been "fixed" yet or if Plaintiff/husband were planning to do so.

37. On the morning of April 18, 2013, Tammy Blake called Plaintiff into her office where Materials Manager Sherri Krepps also eventually entered. Blake then told Plaintiff she was being terminated due to her payroll position being eliminated.

38. As the meeting on April 18, 2013 Blake also told Plaintiff that she had always done an outstanding job for Defendant. Notwithstanding Plaintiff was terminated.

### III. CAUSES OF ACTION

#### A. COUNT ONE

#### PREGNANCY DISCRIMINATION
(Sections 4112.02 and 4112.99 Ohio Revised Code)

39. Plaintiff restates the allegations of paragraph 1-38 herein as if fully rewritten.

40. Plaintiff, during her two pregnancies while employed at Defendant was protected from pregnancy discrimination, by Sections 4112.02 and 4112.99 Ohio Revised Code.

41. During both of her pregnancies Defendant through its' management employees expressed an intense animus and oppositions to Plaintiff's pregnancies, including, but not limited to statements that they didn't like children, did not want grandchildren of their own and wanting to know when Plaintiff and/or her husband were going to get "fixed" to avoid further pregnancies.

42. Furthermore, Defendant took away some of Plaintiff's job responsibilities due to her pregnancies and ultimately terminated Plaintiff due to her pregnancies.

6

43. Defendant's actions were malicious, intentional and willful and as such subjected Defendant to the imposition of funeral damages.

44. As a result of Defendant's actions, Plaintiff has been damaged, at least, in the form of lost pay and benefits.

### B. COUNT ONE
### FAMILY MEDICAL AND LEAVE ACT

45. Plaintiff restates the allegations of paragraphs 1-44 herein as if fully rewritten.

46. Both of Plaintiff's pregnancies during her employment with Defendant were covered by the Family Medical and Leave Act and were approved by Defendant as a FMLA leave.

47. After Plaintiff returned from her second pregnancy leave, Defendant failed to return her to the job she held just prior to leaving on maternity leave. Further, within 10 days of returning to employment from her FMLA leave in April 2013, Defendant terminated Plaintiff for exercising her rights under FMLA.

48. Defendant's actions described above violated the Family and Medical Leave Act in respect to Plaintiff's employment.

49. As a result of Defendant's actions, Plaintiff has been damaged.

50. Plaintiff entitled to recover from Defendant statutory damages and attorney fees provided by FMLA.

**WHEREFORE**, Plaintiff Amy Scott demands judgment against Defendant Orbis Corporation as follows:

A. Reinstatement to her former position at Defendant;

B. Compensatory damages in excess of One Hundred Thousand Dollars ($100,000);

C. Punitive damages in excess of One Hundred Thousand Dollars ($100,000);

D.  Statutory damages and attorney fees in accordance with the Family and Medical Leave Act;

E.  Pre and post judgment interest;

F.  An award of reasonable attorneys' fees, costs and expenses incurred as a result of Defendant's breach; and

G.  Any and all other relief this court deems just and equitable.

Respectfully submitted,

DUWEL LAW

David M. Duwel (0029583)
130 West Second Street, Suite 2101
Dayton, OH 45402
(937) 297-1154, telephone
(937) 297-1152, facsimile
david@duwellaw.com
*Attorney for Plaintiff*

**PLAINTIFF DEMANDS TRIAL BY JURY**

David M. Duwel (0029583)

8